1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

9  JASON R. PEZANT,                          CASE NO. 1:11-cv–00564-BAM PC

10                    Plaintiff,              ORDER DISMISSING COMPLAINT, WITH
                                              LEAVE TO AMEND
11        v.
                                              (ECF No. 1)
12  F. GONZALEZ, et al.,
                                              THIRTY-DAY DEADLINE
13                    Defendants.
                                          /
14

15  **I.    Screening Requirement**

16        Plaintiff Jason R. Pezant is a state prisoner proceeding pro se and in forma pauperis in this

17  civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the Court is the complaint, filed

18  April 6, 2011.

19        The Court is required to screen complaints brought by prisoners seeking relief against a

20  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

21  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

22  "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

23  monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

24        In determining whether a complaint states a claim, the Court looks to the pleading standard

25  under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and

26  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

27  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

28  demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v.

1

1  Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

2  544, 555 (2007)).

3  **II.   Complaint Allegations**

4      Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and

5  is incarcerated at the California Correctional Institution, Tehachapi.  This action is brought against

6  twenty one defendants alleging fifteen separate causes of action.  Plaintiff alleges that prison officials

7  violated his constitutional rights by validating him as a gang member based upon literature that he

8  possessed and confiscated his personal property.

9      Plaintiff's complaint is a twenty five page, dense, barely legible, chronology of unrelated

10 events that occurred over a period that appears to extend beyond one year.  Because Plaintiff's

11 complaint is not in compliance with Rules 8(a) and 18, the Court declines to expend its already taxed

12 resources with attempting to sort out his claims.  Plaintiff will be granted the opportunity to file an

13 amended complaint.  In the paragraphs that follow, the Court will provide Plaintiff with the legal

14 standards that appear to apply to his claims.  Plaintiff should carefully review the standards and

15 amend only those claims that he believes, in good faith, are cognizable.

16 **III.   Legal Standards**

17     **A.   Linkage Requirement**

18     Under section 1983, Plaintiff must demonstrate that each defendant personally participated

19 in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires

20 the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S. Ct.

21 at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  "[A] complaint [that]

22 pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line

23 between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting

24 Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations

25 contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 129

26 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere

27 conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

28 ///

1    **B.    Official Capacity**

2        "The Eleventh Amendment bars suits for money damages in federal court against a state, its

3    agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety,

4    488 F.3d 1144, 1147 (9th Cir. 2007).  A suit brought against prison officials in their official capacity

5    is generally equivalent to a suit against the prison itself. McRorie v. Shimoda, 795 F.2d 780, 783

6    (9th Cir. 1986).  Therefore prison officials may be held liable if "'policy or custom' . . . played a part

7    in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S.

8    159, 166 (1985).  The official may be liable where the act or failure to respond reflects a conscious

9    or deliberate choice to follow a course of action when various alternatives were available. Clement

10   v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389

11   (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane

12   County Washington, 594 F.3d 707, 713 (9th Cir. 2010).  To prove liability for an action policy the

13   plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom

14   established by a . . . policymaker possessed with final authority to establish that policy." Waggy, 594

15   F.3d 713.  Liability for failure to act requires that Plaintiff show that the "employee violated the

16   plaintiff's constitutional rights;" the agency "has customs or policies that amount to deliberate

17   indifference;" and "these customs or policies were the moving force behind the employee's violation

18   of constitutional rights." Long, 442 F.3d at 1186.

19   **C.    First Amendment**

20       The Supreme Court has long recognized that "(l)awful incarceration brings about the

21   necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

22   considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948); see also

23   Pell v. Procunier, 417 U.S. 817, 822, (1974); Wolff v. McDonnell, 418 U.S. 539, 555 (1974). "The

24   fact of confinement and the needs of the penal institution impose limitations on constitutional rights,

25   including those derived from the First Amendment, which are implicit in incarceration." Jones v.

26   North Carolina Prisoners' Labor Union Inc.,, 433 U.S. 119, 125 (1977) (quoting Price, 344 U.S. 266,

27   285 (1948)).  As stated in Pell, 417 U.S. at 822:

28                (A) prison inmate retains those First Amendment rights that are not

3

inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

### 1.    Freedom of Association

"[F]reedom of association is among the rights least compatible with incarceration." <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131 (2003). Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context." <u>Id</u>. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, including the right to associate with individuals with whom an inmate would otherwise enjoy close personal and professional relations outside the prison context." <u>Dunn v. Castro</u>, 621 F.3d 1196, 1202 (9th Cir. 2010) (internal citations omitted).

### 2.    Free Speech

While an inmate does retain First Amendment rights that are not inconsistent with his status as a prison, a regulation that impinges upon First Amendment rights is valid if it is reasonably related to a legitimate penological interest. <u>Shaw v. Murphy</u>, 532 U.S. 223, 229 (2001). Preserving internal security is one of the most legitimate penological goals. <u>Overton</u>, 539 U.S. at 133.

### 3.    Retaliation

A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005); <u>accord</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

### D.    Eighth Amendment

To prove a violation of the Eighth Amendment the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 20  10) (citations omitted). Deliberate indifference requires a showing that

1   "prison officials were aware of a "substantial risk of serious harm" to an inmates health or safety and

2   that there was no "reasonable justification for the deprivation, in spite of that risk." Id. (quoting

3   Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994)). The circumstances, nature, and duration of the

4   deprivations are critical in determining whether the conditions complained of are grave enough to

5   form the basis of a viable Eighth Amendment claim." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

6   2006).

7            **1.    Exercise**

8            Exercise is a basic need protected by the Eighth Amendment. Thomas, 611 F.3d at 1151.

9   To deprive a prisoner of outdoor exercise during a period of long term, continuous segregation would

10  violate the Eighth Amendment rights of the plaintiff. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir.

11  1996).

12       **E.    Due Process**

13          The Due Process Clause protects against the deprivation of liberty without due process of

14  law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005). In order to state a cause

15  of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which

16  the protection is sought. Id. The Due Process Clause itself does not confer on inmates a liberty

17  interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The

18  existence of a liberty interest created by state law is determined by focusing on the nature of the

19  deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law

20  are generally limited to freedom from restraint which "imposes atypical and significant hardship on

21  the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

22          Under certain circumstances, labeling a prisoner with a particular classification may implicate

23  a liberty interest subject to the protections of due process. Neal v. Shimoda, 131 F.3d 818, 827 (9th

24  Cir. 1997) ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled

25  with the subjection of the targeted inmate to a mandatory treatment program whose successful

26  completion is a precondition for parole eligibility create the kind of deprivations of liberty that

27  require procedural protections").

28          To comply with due process prison officials must provide the inmate with "some notice of

the charges against him and the opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) Additionally, the inmate must receive periodic reviews of his placement in administrative segregation. Hewitt v. Helms, 459 U.S. 460, 477, n.9 (1983) overruled on other grounds by Sandin, 515 U.S. 742 (1995).

California's decision to classify gang members for placement is SHU is not a disciplinary measure, but is designed to preserve order in the institution and protect inmates and is a matter of administrative discretion. Bruce, 351 F.3d at 1287. Therefore the decision to place an inmate on indeterminate SHU status based on gang affiliation must be supported by "some evidence." Id. The evidence relied on must have some indicia of reliability. Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990).

### 1. False Reports

The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations. Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986). However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556.

### 2. Prison Regulations

Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)). There is no independent cause of action for a violation of Title 15 regulations. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996). Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430

(8th Cir. 1997)).

### F.    Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted).  A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim.  Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted).

### G.    State Law

The California Tort Claims Act[1] requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2010).  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified

---

[1] The Court recognizes that in City of Stockton v. Superior Court, 42 Cal.4th 730, 742 (Cal. 2007), California's Supreme Court adopted the practice of referring to California's Tort Claims Act as the Government Claims Act. However, given that the federal government has also enacted a Tort Claims Act, 28 U.S.C. § 2671, the Court here refers to the Government Claims Act as the California Tort Claims Act in an effort to avoid confusion.

1   School District, 42 Cal.4th 201, 209 (2007).  To state a tort claim against a public employee, a

2   plaintiff must allege compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6;

3   Bodde, 90 P.3d at 123.

4          **H.      Declaratory Relief**

5          "A declaratory judgment, like other forms of equitable relief, should be granted only as a

6   matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of Lakewood

7   Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve

8   a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings

9   and afford relief from the uncertainty and controversy faced by the parties."  United States v.

10  Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the

11  jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional

12  rights were violated.  Accordingly, a declaration that Defendants violated Plaintiff's rights is

13  unnecessary.

14         **I.       Injunctive Relief**

15         For each form of relief sought in federal court, Plaintiff must establish standing.  Mayfield

16  v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010). This requires

17  Plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and

18  particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be

19  fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial

20  decision will prevent or redress the injury."  Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149

21  (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted).

22         The Prison Litigation Reform Act places limitations on injunctive relief.   Section

23  3626(a)(1)(A) provides in relevant part, "Prospective relief in any civil action with respect to prison

24  conditions shall extend no further than necessary to correct the violation of the Federal right of a

25  particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless

26  the court finds that such relief is narrowly drawn, extends no further than necessary to correct the

27  violation of the Federal right, and is the least intrusive means necessary to correct the violation of

28  the Federal right."  18 U.S.C. § 3626(a)(1)(A).

1        **J.      Rule 18**

2        Plaintiff may not pursue multiple, unrelated claims in this action.  Pursuant to the Federal

3    Rules of Civil Procedure, [a] party asserting a claim, counterclaim, crossclaim, or third-party claim

4    may join, as independent or alternate claims, as many claims as it has against an opposing party."

5    Fed. R. Civ. P. 18(a).  "Thus multiple claims against a single party are fine, but Claim A against

6    Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims

7    against different defendants belong in different suits, not only to prevent the sort of morass [a

8    multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required

9    filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals

10   that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."  George

11   v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff will not be permitted to proceed with a

12   "mishmash of a complaint," id., and is cautioned that if his amended complaint fails to comply with

13   Rule 18(a), the Court will choose which claims will proceed and will dismiss out all unrelated

14   claims.

15       **K.      Amended Complaint**

16       The Court advises Plaintiff of the following requirements under the Federal Rules of Civil

17   Procedure regarding the general formatting of his complaint.  Plaintiff's complaint must contain "a

18   short and plain statement of the claim showing that [Plaintiff] is entitled to relief."  Federal Rule of

19   Civil Procedure 8(a)(2).  Plaintiff's complaint is neither short nor plain. Plaintiff's complaint

20   contains twenty five pages of barely legible writing.

21       "Each allegation must be simple, concise, and direct." Federal Rule of Civil Procedure

22   8(d)(1).  A party must state its claims or defenses in numbered paragraphs, each limited as far as

23   practicable to a single set of circumstances." Federal Rule of Civil Procedure 10(b).  "[E]ach claim

24   founded on a separate transaction or occurrence . . . must be stated in a separate count." Federal Rule

25   of Civil Procedure 10(b).

26       Plaintiff is required to submit filings that are "clearly legible."  Local Rule 130(b).  In

27   submitting a first amended complaint in compliance with this order, Plaintiff is advised that he must

28   find a way to submit a complaint that is improved with respect to legibility, and must use letters no

9

1   smaller than used in the instant order, Times New Roman 12.  Since Plaintiff must comply with Rule

2   18(a), twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth

3   specific facts in support of those claims.  Accordingly, if Plaintiff chooses to amend the complaint,

4   the amended complaint may not exceed twenty-five pages in length, and it will be stricken from the

5   record if it violates this page limitation.

6        Plaintiff is advised that the failure to comply with the Local Rules, the Federal Rules of Civil

7   Procedure, and the Court's orders will result in Plaintiff's amended complaint being stricken from

8   the record.  Plaintiff is further warned that failure to take meaningful steps to obey the Court's orders

9   may result in this action being dismissed for failure to obey a court order.  See Local Rule 110.

10  **VI.    Conclusion and Order**

11       Plaintiff's complaint shall be dismissed as it does not comply with Federal Rules of Civil

12  Procedure 8 and 18.  Plaintiff is granted leave to file an amended complaint within thirty days.  Noll

13  v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit

14  by adding new, unrelated claims in his amended complaint.  George, 507 F.3d at 607 (no "buckshot"

15  complaints).

16       Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each

17  named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights,

18  Iqbal, 129 S. Ct. at 1948-49.  "The inquiry into causation must be individualized and focus on the

19  duties and responsibilities of each individual defendant whose acts or omissions are alleged to have

20  caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d at 633.  Although accepted as true,

21  the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level .

22  . . ."  Twombly, 550 U.S. at 555 (citations omitted).

23       Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc.,

24  114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must

25  be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  "All

26  causes of action alleged in an original complaint which are not alleged in an amended complaint are

27  waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th

28  Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.   Plaintiff's complaint, filed April 6, 2011, is dismissed for failing to comply with Federal Rules of Civil Procedure 8 and 18;

3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;

4.   Plaintiff's amended complaint shall not exceed 25 pages in length and the font shall be no smaller than Times New Roman 12; and

5.   If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **January 17, 2012**                         **/s/ Barbara A. McAuliffe**
                                                        UNITED STATES MAGISTRATE JUDGE

11