# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON R. PEZANT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>F. GONZALEZ, et al.,<br><br>　　　　Defendants.<br>_____ / | CASE NO. 1:11-cv–00564-BAM PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS<br><br>(ECF No. 17)<br><br>THIRTY DAY DEADLINE |

**I.    Screening Requirement**

Plaintiff Jason R. Pezant is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On January 17, 2012, an order issued dismissing Plaintiff's complaint for failing to comply with Federal Rules of Civil Procedure 8 and 18. (ECF No. 12.) On April 6, 2012, Plaintiff's first amended complaint was stricken from the record for failing to comply with the January 17, 2012 order. (ECF No. 16.) Currently before the Court is Plaintiff's first amended complaint and motion for a temporary restraining order, filed May 4, 2012.[1] (ECF Nos. 17, 18.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

---

[1] Plaintiff's motion for a temporary restraining order shall be addressed once it is determined which claims are proceeding in this action.

1  monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

2  A complaint must contain "a short and plain statement of the claim showing that the pleader
3  is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but
4  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
5  do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell
6  Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)).

7  Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings
8  liberally construed and to have any doubt resolved in their favor, but the pleading standard is now
9  higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive
10 screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to
11 allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged,
12 Iqbal, 556 U.S. at , 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir.
13 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that
14 are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.
15 Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Moss, 572 F.3d at 969.

16 Further, under section 1983, Plaintiff must demonstrate that each defendant personally
17 participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).
18 Although a court must accept as true all factual allegations contained in a complaint, a court need
19 not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.
20 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
21 do not suffice." Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

22 **II.     First Amended Complaint Allegations**

23 Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and
24 is incarcerated at the California Correctional Institution, Tehachapi. Plaintiff is serving a ten year
25 sentence for possession of firearms and assault weapons and participating in a street gang. (First
26 Am. Compl. ¶ 25.) Plaintiff brings this action against twenty two defendants alleging 1) retaliation
27 in violation of the First Amendment, (id. at ¶¶ 123-125, 130-133); 2) suppression of expression in
28 violation of the First Amendment, (id. at ¶¶ 126-129); 3) deliberate indifference in violation of the

Eighth Amendment, (id. at ¶¶ 134-141); 4) conspiracy, (id. at ¶¶ 142-147); 5) regulations used to validate him as a gang member are vague and over broad, (id. at ¶¶ 148-150); and 6) failure to train/supervisory liability, (id. at ¶¶ 151-154). Plaintiff is seeking injunctive relief and compensatory and punitive damages. (Id. at pp. 22-25.)

      Plaintiff states that during his incarceration he has filed or assisted others in filing inmate grievances and his family has sent him various books and articles relating to African American historical figures and culture. (Id. at ¶¶ 27, 28.) Plaintiff alleges that in 2009, Defendant Sigston began harassing Plaintiff for an unknown reason, but Plaintiff believes it was because of Plaintiff's activities in filing grievances. (Id. at ¶¶ 28, 29.) On two occasions, Defendant Sigston confiscated four pieces of Plaintiff's property, which were not contraband. (Id. at ¶ 30.) On a later date, Defendant Sigston asked Plaintiff if he was validated and Plaintiff replied that he did not know. Defendant Sigston then stated that Plaintiff would be. (Id. at ¶¶ 31-33.) Plaintiff filed grievances against Defendant Sigston's harassment which went unanswered. (Id. at ¶ 34.)

      On March 19, 2010, Defendants Nicolson and Chamberlin searched Plaintiff's cell and confiscated some of his correspondence and over 400 pages of Black History Research and African religious literature. (Id. at ¶ 36.) Plaintiff filed an inmate grievance. (Id. at ¶ 37.) On April 8, 2010, Defendant Turmezei summoned Plaintiff to the program office and presented Plaintiff with chronos documenting some of the confiscated materials. (Id. at ¶ 38.) Defendant Turmezei alleged that based on source documents Plaintiff had been validated as a gang member. The source documents included 1) a confidential memo dated April 7, 2010, which stated that Plaintiff wrote an outgoing letter evidencing his association with a validated gang member; 2) a confidential memo dated April 6, 2010, which stated Plaintiff's property revealed "a reflective revolutionary styled writing" which "contained specific revolutionary language and identifiers showing Pezant's association with the BGF [Black Guerrilla Family]; 3) a confidential chrono dated March 25, 2010, which stated that a search of Plaintiff's property revealed a two-page "historical overview of the history of the BGF" and "identified founder" George Jackson; 4) a chrono dated April 21, 2009, which stated Plaintiff's property revealed two symbols evidencing Plaintiff's association with the BGF, a drawing containing the image of George Jackson, and a drawing containing the image of a Black man restrained by

officers with "Blood In My Eye" the title of George Jackson's book, which showed his allegiance, loyalty, and association with the BGF; 5) a chrono dated March 25, 2012, which stated Plaintiff's property revealed a cut-out picture of George Jackson which showed his loyalty to the BGF prison gang; 6) a chrono dated March 25, 2010, stating Plaintiff's property revealed a cut-out magazine picture of a gorilla and that members and associates of the BGF use images of gorillas. (Id. at ¶ 39.)

Plaintiff was given copies of the chronos and taken to administrative segregation. Defendant Tyree acted as "segregation authority" and authorized Plaintiff's administrative segregation confinement on April 8, 2010. (Id. at ¶ 40.) Plaintiff wrote his responses to the allegations and repeated asked for the opportunity to gather and present evidence from his property to prove his non-affiliation with prison gangs. Plaintiff alleges that Defendant Turmezei clearly selected tidbits of information and skewed them out of context. (Id. at ¶ 41.) On April 9, 2010, Defendant Turmezei retrieved Plaintiff's response to the allegations and Plaintiff verbally reiterated his request to present exonerating evidence, but Defendant Turmezei submitted the validation package to his superior that same day. (Id. at ¶¶ 42, 43.) Plaintiff filed requests to submit evidence to Defendant Turmezei's superiors, which were denied or went unanswered. (Id. at ¶¶ 45, 46.)

On June 8, 2010, after he received his property, Plaintiff submitted an inmate grievance with his evidence attached, but it was rejected by Defendant Sampson because it was untimely. On that same day, Plaintiff received notice that Defendants Buechner and Jakabosky had validated him as a BGF associate on May 17, 2010. (Id. at ¶¶ 48, 49.) Plaintiff resubmitted his inmate appeal, which was rejected on June 15, 2010, on the grounds that it contained profanity. (Id. at ¶¶ 50, 51.) Plaintiff resubmitted the appeal with the profanity censored. On July 13, 2010, Defendants Stelter, Barnes, and Hopkin ordered Plaintiff's continued confinement in administrative segregation finding that Plaintiff's presence threatens the safety and security of the institution. (Id. at ¶¶ 52, 53.)

Between July 12 and 19, 2010, Defendants Noyce, Gutierrez, and Holland partially granted Plaintiff's appeal outlining that the "OCS" had reviewed the source items submitted by the gang unit and Plaintiff's rebuttal. However, the review did not include Plaintiff's evidence. (Id. at ¶ 54.) Defendant Noyce allegedly misstated a statement of Plaintiff's making it seem antagonistically arrogant and undoubtedly having a negative effect on the next level of review. (Id. at ¶ 57.)

4

On August 16, 2010, Defendant Powell made the decision to endorse Plaintiff to serve an indefinite term in the Security Housing Unit. (Id. at ¶ 60.) On September 16, 2010, during a committee hearing Plaintiff vehemently raised objections to the committee's decision to reclassify him to be housed with BGFs stating he is not a BGF and invariably housing him with them will place his life in danger. (Id. at ¶¶ 61, 62.) Defendants Steadman, Lundy, and Liles ignored Plaintiff. (Id. at ¶ 63.) Defendant Walker lied by stating in a report that Plaintiff agreed with his yard and cell status. (Id. at ¶ 64.) Defendants Liles, Lundy, and Steadman signed the committee report in order to expose Plaintiff to harm. (Id. at ¶ 65.) On December 2, 2010, Defendants Allen and Foston denied Plaintiff's appeal at the Director's Level, relying on the findings of Defendants Noyce, Gutierrez, and Holland. (Id. at ¶ 66.)

Plaintiff claims that 1) the literature used to validate him as a gang member is protected speech and using it to validate him violates the First Amendment, (id. at ¶¶ 69-73); 2) he was validated as a gang member in retaliation for filing inmate grievances, (id. at ¶¶ 74-88); 3) he has been placed at a substantial risk of serious harm by being reclassified as a gang member in violation of the Eighth Amendment, (id. at ¶¶ 89-104); 4) all Defendants have engaged in a conspiracy to harm him for exercising his right to pursue prison grievances and advocate "Aftocentric" ideas, (id. at ¶¶ 105-106); and 5) the regulations cited in the justification for the adverse action against Plaintiff are vague and overbroad, (id. at ¶¶ 107-117).

For the reasons set forth below, Plaintiff's first amended complaint states a claim against Defendants Turmezei, Buechner, and Jakabosky, but fails to state a claim against any other named defendant.

**III.   Discussion**

    **A.   First Amendment**

        **1.   Retaliation**

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

5

conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's complaint is devoid of any allegations that Defendant Sigston was involved in the decision to validate Plaintiff. Plaintiff statement that he believes Defendant Sigston began harassing him due to his filing administrative grievances fails to state a cognizable claim. Additionally to the extent that Plaintiff would be able to state a claim for retaliation against Defendant Sigston, it is unrelated to the additional claims Plaintiff is alleging in this action and therefore not properly brought in the same action. See Fed. R. Civ. P. 18, 20.

While Plaintiff believes that he was harassed, investigated, placed in administrative segregation, and validated as a prison gang member in retaliation for filing prison grievances, his complaint is devoid of any indication that any named Defendant was aware that Plaintiff filed grievances and took adverse action because of that activity. Also, while Plaintiff claims that he was retaliated against because of his political and theological ideas, it is clear from the complaint allegations that prison officials became aware of Plaintiff's potential involvement in gang activity when they discovered that he was indicating his desire to correspond with a validated gang member. Upon investigation, indicia of gang activity was found among Plaintiff's personal property. Plaintiff was granted a hearing and periodic reviews and at each level the reviewing officials found that Plaintiff's validation was appropriate. Plaintiff's conclusory allegations that he was validated and kept in administrative segregation because he filed prison grievances or because of the ideology of the materials he possessed are insufficient to state a plausible claim for retaliation in violation of the First Amendment. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

### 2. **Freedom of Speech**

The Supreme Court has long recognized that "(l)awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S. Ct. 1049, 1060 (1948), overruled on other grounds by McCleskey v. Zant, 449 U.S. 467, 111 S. Ct. 1454; see also Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974); Wolff v. McDonnell, 418

U.S. 539, 555, 94 S. Ct. 2963, 2974 (1974). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Jones v. North Carolina Prisoners' Labor Union Inc., 433 U.S. 119, 125, 97 S. Ct. 2532, 2538-39 (1977) (quoting Price, 344 U.S. at 285, 68 S. Ct. at 1060). As stated in Pell, 417 U.S. at 822, 94 S. Ct. at 2804:

> (A) prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

Plaintiff alleges that he was targeted for administrative segregation by ill willed prison officials because of the literature he possessed. However, Plaintiff complaint states that for the duration of his stay on CCI 4A yard, his family sent him information that was approved by prison officials. (ECF No. 17 at ¶ 27.) Prison officials did not use the materials to validate Plaintiff until March 2010, and this was only after Plaintiff was found to be associating with a validated gang member. Plaintiff alleges that Defendant Turmezei worded his report to mislead the reader to believe that Plaintiff actually wrote a letter to a gang member, when he did not write directly to the gang member, but told his brother that he wanted to communicate with this validated gang member. (Id. at ¶ 81.) This does not rebut the fact that Plaintiff wrote a letter evidencing his association with a validated gang member. (Id. at ¶ 39(a).) Which is the fact alleged in the source item.

While Plaintiff alleges that he was designated as a gang member based upon the political and theological materials that he possessed, he had previously possessed these materials without their being used to validate him as a gang member. It was only after prison officials became aware of this association with a validated gang member that these items were considered as gang indicia. Additionally, Plaintiff was not validated based only upon these items, but upon the letter evidencing his association with a known gang member and his possession of a cut out picture of a gorilla, which is an image associated with members and associates of the BGF. (Id. at ¶ 39(b).) Plaintiff has failed to state a plausible claim that his First Amendment rights were violated by using Plaintiff's possession of images and writings of the founder of the BGF and BGF training materials as the

source criteria identifying him as a prison gang member.

### B. Eighth Amendment

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984 (1994).

Plaintiff states that during the September 16, 2010 hearing, he told the classification committee that he is not a gang member and placing BGFs in his cell would invariably place his life in danger. Plaintiff alleges that reclassifying him as a gang member and housing him with gang members who may try to kill him is a clear violation of the Eighth Amendment. This is insufficient to objectively show that Plaintiff was at a substantial risk of serious harm. Plaintiff further alleges that labeling him as a gang member places him at a risk of being assaulted, set-up, or having his food tampered with by correctional officers who view prison gang members as their archenemies. While Plaintiff speculates that he may be at risk of harm based upon his designation as a BFG gang member, Plaintiff's complaint fails to set forth any facts supporting a claim that he was at a substantial risk of harm or that any of the named defendants knowing disregarded such a risk. In the absence of sufficient facts to support a plausible claim against any named defendant, Plaintiff fails to state a claim.

### C. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)

1  (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.

2  1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d

3  1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121,

4  1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact

5  details of the plan, but each participant must at least share the common objective of the conspiracy.'"

6  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

7  Although, for pleading purposes, the Court accepts as true the allegations in the complaint,

8  the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level .

9  . . ." Twombly, 127 S. Ct. at 1965 (citations omitted). A plaintiff must set forth "the grounds of his

10  entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation

11  of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations and citations omitted).

12  Plaintiff has not alleged any facts supporting the existence of a conspiracy between the named

13  defendants. The fact that each committee member or prison official who reviewed the decision to

14  designate Plaintiff as a gang member or continue his placement in administrative segregation

15  validated the decision does not support Plaintiff's conclusory allegation that a conspiracy existed.

16  Further, Plaintiff has not alleged facts demonstrating that Defendants violated his constitutional

17  rights. In order to state a cognizable claim for relief for conspiracy, Plaintiff must establish that

18  Defendants conspired to violate an underlying constitutional right.

19  **D.  Due Process**

20  To comply with due process prison officials must provide the inmate with "some notice of

21  the charges against him and the opportunity to present his views to the prison official charged with

22  deciding whether to transfer him to administrative segregation. Bruce v. Ylst, 351 F.3d 1283, 1287

23  (9th Cir. 2003) Additionally, the inmate must receive periodic reviews of his placement in

24  administrative segregation. Hewitt v. Helms, 459 U.S. 460, 477, n.9, 103 S. Ct. 864 (1983)

25  overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293 (1995). While

26  Plaintiff alleges that Defendants Steltzer, Barnes, and Hopkin ordered his continued confinement in

27  administrative segregation on July 13, 2010, Defendant Powell endorsed his indefinite term in the

28  Security Housing Unit on August 16, 2010, and Defendants Steadman, Lundy, Liles, and Walker

9

ignored his arguments during the September 16, 2010 committee meeting, the periodic reviews required to comply with due process do not give rise to a claim based upon the initial determination that Plaintiff was a prison gang member. Plaintiff fails to state a claim against Defendants Steltzer, Barnes, Hopkin, Powell, Steadman, Lundy, Liles, and Walker based upon their review of Plaintiff's placement in administrative segregation.

Similarly, the prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). There is no liberty interest in a prison grievance procedure as it is a procedural right only, Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), and Plaintiff cannot state a claim based upon the denial of his inmate appeals. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996). Plaintiff fails to state a claim against Defendants Tyree, Sampson, Noyce, Gutierrez, Holland, Allen, and Foston.

### E.     Title 15 Regulations

Plaintiff alleges that the source materials used to validate him as a gang member did not comply with the criteria established in the California Code of Regulations. Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535, 101 . Ct. 1908 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 328, 101 S. Ct. 1908 (1986)). There is no independent cause of action for a violation of Title 15 regulations. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996). Nor is there any liability under § 1983 for violating prison policy.

Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)).

Plaintiff also claims that the California Code of Regulations that were cited in the report validating him as a gang member are vague and overbroad. A regulation is vague when it fails to clearly define what is prohibited. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298-99 (1972). The focus on vagueness is whether the regulation "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or if it authorizes or even encourages arbitrary and discriminatory enforcement." Gospel Missions of America, v. City of Los Angeles, 419 F.3d 1042, 1047 (2005) (internal punctuation and citations omitted). When First Amendment freedoms are at stake the regulation must have a greater degree of specificity and clarity, however "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Gospel Missions of America, 419 F.3d at 1047 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S. Ct. 2746 (1989)). If it is clear what the statute prohibits in the vast majority of intended applications, facial invalidation is not warranted. Gospel Missions of America, 419 F.3d at 1047.

A regulation is overbroad when the regulation prohibits protected conduct. Grayned, 408 U.S. at 114, 92 S. Ct. at 2302. In an overbreadth challenge the question "is whether the [regulation] sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." Grayned, 408 U.S. at 115, 92 S. Ct. at 2302. A challenge to prison regulations that are alleged to infringe upon an inmate's protected rights, as alleged here, is analyzed under the test set forth in Turner v. Safely, 482 U.S. 78, 107 S. Ct. 2254 (1987). Bahrampour v. Lampert, 356 F.3d 969, 975-76 (9th Cir. 2004) (applying the Turner factors to inmate's claim that regulations are vague and overbroad). Under Turner, the factors considered are 1) whether the regulations further a neutral and legitimate governmental objective and are rationally related to the objective; 2) if "alternative means of exercising the right" are available; 3) the impact that accommodation of the right will have on others at the facility; and 4) they are not an "exaggerated response" to facility concerns. Thornburgh, 490 U.S. at 414, 417-19. At the pleading stage the court is not in a position to decide if the regulations in question are valid under Turner. Barrett v. Belleque, 544 F.3d 1060, 1061 (9th

Cir. 2008).

Plaintiff's allegation that Defendants Turmezei, Buechner and Jakabosky used §§ 3000, 3001, 3023, 3321, and 3378, which he claims are vague and overbroad regulations, to validate Plaintiff as a gang member is sufficient to state a cognizable claim. However, Plaintiff fails to state a claim against any other named defendant based upon the regulations used to validate him as a gang member.

### F. Supervisory Liability

Plaintiff alleges that Defendants are liable because they failed to train, supervise, control or enacted policies that were the moving force behind the constitutional violations. Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Iqbal, 129 S. Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Id. at 1948. In other words, to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff's conclusory allegations fail to allege facts to state a claim for a violation of his constitutional rights.

The "failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006); see City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989). The failure to train must be the moving force behind the constitutional violation. Canton, 489 U.S. at 391, 109 S. Ct. at 1206. Plaintiff 's claim fails as he has not set forth any factual allegations to show that any defendant was not adequately trained and has not alleged a cognizable claim for a violation of his constitutional rights.

### IV. Conclusion and Order

Plaintiff's complaint states a cognizable claim against Defendants Turmezei, Buechner and Jakabosky for using the allegedly vague and overbroad regulations to validate Plaintiff as a gang member, but does not state any other claims for relief under section 1983. The Court will provide

Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendants Turmezei, Buechner and Jakabosky for using the allegedly vague and overbroad regulations to validate Plaintiff as a gang member, Plaintiff may so notify the Court in writing.  The other defendants and claims will then be dismissed for failure to state a claim.  Plaintiff will then be provided with three summonses and three USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Turmezei, Buechner and Jakabosky.

If Plaintiff elects to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal,129 S. Ct. at 1948-49; Jones, 297 F.3d at 934.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).  The mere possibility of misconduct is insufficient to state a claim. Iqbal, 129 S. Ct. at 1950.  Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
    a. File a second amended complaint curing the deficiencies identified by the Court in this order, or

      b.     Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendants Turmezei, Buechner and Jakabosky;

      c.     Plaintiff's second amended complaint shall not exceed 25 pages in length and the font shall be no smaller than Times New Roman 12; and

3.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:** **June 13, 2012**                    /s/ **Barbara A. McAuliffe**
                                              UNITED STATES MAGISTRATE JUDGE